Good morning, your honors. Ben Coleman for the appellant Rami Ghanem. My plan was to focus on the venue and jurisdictional issues, and I'll start with the venue. The flaw in the government's argument here as to venue is that they are primarily relying on the Second Circuit's decision in Catino and a few other out-of-circuit cases that rely on Catino. All those cases involve defendants who were arrested in the United States, and Catino itself makes very clear that there are two different rules. If a defendant is arrested outside of the United States and brought into the United States while in custody, the first brought provision of Section 3238 applies. The arrested provision only applies to those defendants who are actually arrested in the United States. In other words, Catino makes clear that for those defendants who are brought into the United States while in custody, the site where they are first brought determines the site of arrest for venue purposes. Mr. Coleman, before you get even further, can you talk to me a little bit about why the venue argument is not waived? Sure, your honor. I think the government has two arguments as to waiver. Their first argument is that a pretrial motion should have been filed in this case. The rule in this circuit is that a pretrial motion only needs to be filed when the venue defect is clear, clear from the face of the indictment. In this case, the defense filed pretrial, a motion for a bill of particulars, asking for the connection of the offense to the Central District of California. The government opposed the motion, said nothing about 3238, said the indictment didn't allege anything about 3238. And the defense was proceeding under sort of the broad venue rules that apply to conspiracy cases that if an overt act is committed in a district, that's where venue is. The first time the government mentioned 3238 was shortly before the trial, after the motion's deadline, so the defense could not file a pretrial motion. And the government asked for the court to take initial notice regarding venue, and for the first time cited 3238. The defense immediately objected, said we are disputing venue. The government, they then, jury instructions were submitted, venue was hotly disputed. The government realized that venue was going to be disputed, and then at the Rule 29 stage, the defense did what they were supposed to do, is they filed a Rule 29 motion arguing a lack of venue, making this precise argument. The district court didn't find at the time that the defense had waived the argument. This is exactly what the defendant did in the recent Moran Garcia case that this court recently decided back a few months ago. He filed the Rule 29 motion, made a timely motion. The argument is thoroughly preserved. But the count three didn't state, you know, that it happened in California. Why wasn't that clear to counsel that there might be a venue defect? Well, first it wasn't clear, and the defense showed that because they filed a motion for a bill of particulars. The bill of particulars was general, it did not, are you saying that it specifically said venue because of California or because he was brought in to Eastern District? It didn't, did it? Did I miss something? The bill of particulars asked for the basis for jurisdiction in this or any other United States court. But the indictment wasn't clear. When there's a conspiracy charged, the government typically proceeds based on the fact that an overt act occurs in the district. The indictment alleged overt acts. If you look at the whole indictment, it alleged overt acts in the Central District of California. The indictment did not allege 3238. The defense did not know that the government was proceeding based on 3238 until after the motions deadline, when for the first time the government announced their reliance on 3238 and asked for judicial notice. So it would be one thing, I guess, if the government had alleged that they were proceeding under 3238 in the indictment or otherwise made that clear before the motions deadline. Was that before trial, though? Was that before trial? They filed their request for judicial notice after the motions deadline. I think it was about seven to ten days before trial. And then the defense immediately objected and said, we object to the judicial notice. We're disputing venue. I mean, the government knew that venue was going to be disputed all along. I think really the point is that the government not be sandbagged and they clearly were not sandbagged. They knew that venue was hotly disputed. There was jury instructions going back and forth with vigorous debate about what the appropriate jury instruction should be for venue. Can you say anything specific about your objections in the context of the jury instructions? That is, as I understand it, you have at least potentially two strings to your bow. One is the objection to jurisdiction at all or to venue at all, and the other is to the jury instructions. So what's your best point with respect to the instructions? With respect to the instructions, and this is another thing about the lack of notice, the government was changing the jury instructions constantly. And the defense had objected on numerous grounds, both in writing and orally at the Rule 30 conference, to the government's venue instructions, saying that they were creating this broad sort of rule that wherever a defendant can be detained is enough. And then the government actually, after the Rule 30 conference, all the objections had been ruled on, again revised their requests and instructions. The defense again objected, and the district court overruled the defense objection. And what you call the revised, again, this is the one telling the jury, ignore the fact that anything to do with an arrest outside the U.S., is that right? Correct. And also that last one got rid of the first restrained language, which is the crucial language. Even under the government's theory, the crucial language is first restrained. They eliminated that language. They just said wherever you were detained in connection with the offense. So this was hotly disputed. It was objected to repeatedly. There's just no waiver here. This is frankly one of the more thoroughly preserved venue claims I've seen. Both a very specific Rule 29 motion, objecting before trial to the government's judicial notice request, jury instructions, objected to both in writing and orally at the Rule 30 conference. Counsel, in terms of what you would like to get, if you got, if we agreed with your general argument here, what would the result be? They would simply retry him back in, what, the Eastern District of New York? I do think that's an important question, and I want to preface my answer by saying, I want the court, and I think the court is well aware, if this count is reversed, Mr. Ghanem pled guilty, accepted responsibility to several counts. He's not going to walk out of prison. He's still looking at many years in custody on the other counts. If the government decides that they want to go forward again on this particular count, then yes, I believe the proper venue is in the Eastern District of New York. Now, under this court's precedent, there's no double jeopardy bar. The relief is that the count is dismissed, and then they can retry in the appropriate form. My suggestion is that the court should not comment on whether the dismissal is with or without prejudice, because that should be up to the Eastern District of New York and the Second Circuit under their rules, because that's where the case would go back to. So the relief would be dismissal of the count, and then if the government elects to retry the count, again, they can get a sentence of many years for Mr. Ghanem on the counts that remain. But if they want to retry this particular count, they would vote against it. But his sentencing, I take it, at this point included all the counts, so we don't know exactly how much he would have gotten on the first two counts. Correct. The sentence would be reversed. That's our request. Clearly, the sentence would be reversed because he was sentenced under sentencing guidelines for this count, which carried a life sentencing guidelines. So the sentence would be reversed. Then the government has two options. Option one is just have him sentenced on the remaining counts for which he accepted responsibility and pled guilty, or they could try to retry him on the 2332G count in New York. If the court had no other questions on venue, I guess I'll discuss jurisdiction, because if the court found our jurisdictional claims, then the count would be obviously terminated completely. At the heart of the jurisdictional claim is really this background constitutional question, which I think is a very important and debatable constitutional question, which is whether Congress can enact an offense that really has no commercial connection to the United States, but the sole basis for extraterritorial jurisdiction is that a United States citizen was involved. But I do think the court can avoid that question by construing the statute in two ways. So I'm going to defer talking about the constitutional question and first talk about the statutory construction issues. The first way to avoid that question is that this particular statute, the extraterritorial provision in 2332GB, says that it applies to conduct prohibited in subsection A. Now, here we have a conspiracy offense, and the conspiracy offense is located in subsection C. So our first position is that the court can construe the statute that it only applies extraterritorially to the substantive offenses that are contained in subsection A. And that is in accordance with the general principles that the Supreme Court has established that you interpret extraterritorial provisions narrowly. And also, this would, of course, avoid, under the doctrine of constitutional doubt, the constitutional question. So for that reason, we think... Mr. Coleman, it seems like you argue in your briefing that the extraterritorial jurisdiction of... I want to make sure this is the same argument you're making now, that the 2332B2 does not apply to conspiracies under the same statute. Is that what you're saying? Yes, Your Honor. And that's... It seems like this exact argument was not accepted by the Second Circuit in a case called United States v. Al-Qasar. Are you familiar with that case? I have seen the Al-Qasar case. I haven't looked at it in a while. My recollection is that there was a jurisdictional contention in that case, but it wasn't based on the argument that I'm making, which focuses on... And I could be wrong about that, Your Honor, because I don't think that was cited by the government. But my contention is based on that first introductory clause to subsection B. And I don't think that that was the argument that was made in that Second Circuit case. And I'm not sure that... I really don't think they discussed it, which is... It says conduct prohibited by subsection A is within the jurisdiction of the United States if... Here we have a subsection C case. It's a conspiracy case. So the plain language of the statute does not apply extraterritorially to conspiracies. And one of the things that I'm confident the Second Circuit didn't address, and the government didn't address it either, is that if you look at other statutes in 2332, I think one of them is I or another one might be F, but we cited them, they put the conspiracy provision in subsection A and then say the offense... Conduct prohibited by subsection A applies extraterritorially. They did something very different in this statute. They put the conspiracy in subsection C. And when Congress does something like that, I think the court is supposed to construe that as an intentional... They've intentionally done something different in this statute to signal that it does not apply extraterritorially to conspiracy offenses. The second argument, statutory construction argument we have, I think is somewhat similar to an argument that I saw that this panel addressed earlier in the week. Earlier in the week, the government, I think, was arguing to your honors that you should construe an and as an or. In this case, the statute lists five different... Subsection B, the extraterritorial jurisdiction provision, lists five separate subparagraphs. The last one between paragraphs four and five is connected by an or. However, there is nothing that connects the other subparagraphs. There's no conjunction. And because of the significant constitutional question that's raised here, it's our position that the court should construe the first subsection, which requires that the offense occur in or affect interstate or foreign commerce, that that should be a required element of all the extraterritorial provisions so as to make the statute constitutional under the foreign commerce clause. And Mr. Coleman, remind me, these extraterritorial conspiracy arguments that you're making now, were they raised below? Are we reviewing them for plain error now? What's our review here? Our position is that review is de novo for a couple of reasons. Number one is this is a jurisdictional question. The court's always... But did you raise... Just before you get into your... Did you raise it at the district court? The defense filed a pretrial motion to dismiss for lack of jurisdiction. Did you base it on this extraterritorial conspiracy argument? They did not use the statutory construction argument that I'm arguing, but they did argue that there was no extraterritorial jurisdiction in this case and that it was unconstitutional to apply extraterritorial jurisdiction. And it's our position under cases like Payar's, Galan, Walton, Studhorse, and a list that it's claims that are waived or forfeited, not arguments. And if we disagree with you and we say plain error, does that affect your... How would you argue with that? I would still argue that we still succeed. And the third and fourth prongs of the plain error test, the government concedes. They don't even argue those. So you're talking about whether there was error and whether it was plain. And our arguments are based on the plain statutory text. I mean, when you look at that conduct prohibited by subsection A, that's plain and in the text. I mean, that's the actual language in the statute. So it's our position that even if plain error applied, that the error was plain. We still maintain that this is a jurisdictional question. Did you say foreign commerce, you know, that the Foreign Commerce Clause doesn't cover this in any of your previous arguments? Below. Below. Below? There is not a Foreign Commerce Clause right now. And I did a case in the 11th Circuit called the Villa Mendoza, where we dug deeply into the Foreign Commerce Clause. So my ears pricked up at that point. Yes, Your Honor, and I'm going to get to that Foreign Commerce Clause question. But to answer your question, the defense filed a pretrial motion to dismiss for lack of jurisdiction. They said that jurisdiction in this case was unconstitutional. Did they argue that the specifics of the Foreign Commerce Clause should not be interpreted so broadly so as to simply apply to any U.S. citizen who commits a crime abroad? I don't know that that issue was fully briefed, but I do think that the pretrial motion to dismiss was sufficient to preserve this claim. Absolutely. You've got just a little less than three minutes. You can use all your time if you wish, but if you want to save any time for rebuttal, you're welcome to do so. Okay. The only quick thing I'll say, and then I'll save time, since Judge Boggs had mentioned the Foreign Commerce Clause, is that there is no case that the government has cited that has held that the simple fact that a U.S. citizen commits a crime abroad, that that means that an offense is sufficiently connected to the Foreign Commerce Clause to allow extraterritorial jurisdiction. No case has ever said that. The provision in the Constitution itself says it requires commerce with a foreign nation. There was no commerce with a foreign nation here. That wasn't alleged in the indictment. It wasn't approved. There's been no evidence to that effect. And I'll save the remaining two times, Your Honor. Very well. Two minutes, Your Honor. Okay. Mr. Robbins, please. Good morning, Your Honors. May it please the Court? Alexander Robbins on behalf of the United States. I suppose unless the Court wants me to start somewhere else, I'll pick up where my colleague, Mr. Coleman, left off on this extraterritoriality issue. And I want to say at the outset that it's not just an academic or a cosmetic issue. I think his use of the incorrect label jurisdiction throughout his argument is the basis for, among other things, his claim that plain error doesn't apply to this because he raised a jurisdictional argument before trial. And that's just legally a mistake. The Supreme Court has made clear, and we cited in our brief in the Morrison v. Australia Bank case, that the question of extraterritoriality is a merits question. The question of extraterritoriality is when a statute prohibits something, does that prohibition apply only in the United States or does that apply outside of the United States? It also goes to his statutory construction argument. Subsection B in 2332G delineates the scope of the statute. You could imagine a statute that restricted the scope of the statute. So, for example, in this case, subsection B could have said this doesn't apply to a member of the U.S. military or anyone who possesses or uses an anti-aircraft missile as part of their duties with the U.S. government. That would restrict the scope of the statute. It would be nonsensical to claim that that sort of restriction in the statute would apply to substantive violations, but not conspiracies or attempts or aiding and abetting. That's simply not a reasonable reading of the statute. And my colleague is also mistaken when he says that this statutory scheme is very different from other similar statutory schemes. It's not. The examples he gave, I think 2332I is one of them. These examples all involve a statutory scheme that places substantive violations in the same place of the statute as conspiracies, in the same place of the statute as attempts. And in this case, all of those things are in subsection C. And this is the point that the government was trying to make in its brief. The crime that's defined here doesn't exist in subsection A. Subsection A defines no crime because it doesn't provide any penalties, criminal penalties for anything. It's one of those statutes that by itself is just a command from Congress. The crime is defined in subsection C, and it includes substantive violations right next to conspiracies. It would be entirely unreasonable and contrary to the statutory structure to read the statute the way my colleague wants to read it, to somehow exclude conspiracies. Plus, contrary to the default rule in extraterritoriality questions, which we cited this court's case in Chuahan Mao, which was a drug case, an 846 drug conspiracy case, that when you're looking at the extraterritorial scope of a conspiracy, you look, as a default rule, to the extraterritorial scope of the underlying offense. Counsel, if I understood what you just said, when you said A does not define any crime, then why is the cross-reference to A? Are you simply saying that A incorporates C and everything else thereafter? Because it did sound rather odd where the statutory text does use the subsection A, and you just told me it doesn't define any crime. Yes, I think, Your Honor. Let me try to step through it with a concrete example. If subsection A said, like a normal criminal statute is worded, whoever does X shall be punished for up to 10 years. That's like a typical criminal statute. If subsection A said, whoever possesses or uses an anti-aircraft missile system shall be punished for up to 10 years. That's A in my hypo. B says extraterritoriality. C says conspiracies and attempts are also covered. I still think you'd use the default rule in Xu Han Mao, but it's a lot closer then. Because then B is referring to A, and A contains the substantive violation. That is not how this statute is structured. A does not define a crime. If you got rid of C, there's no crime at all. You're saying that the cross-reference would make no sense. It would refer to nothing. Yes, Your Honor. As we had in the Andor case that one of the two of you referred to, well, sometimes Congress writes silly stuff. Okay, we'll take that. Let me ask you if I can take you away to venue, unless this really derails you. If so, defer me. If I understand, you might say, the underlying evil aimed at of this argument is, you have this guy in custody in Athens. You landed him in New York, or you landed for whatever reason. Isn't it true that under your argument at that point, you could have gotten a flight to Boise or Little Rock or Louisville and then indicted him on count three in one of those places and tried him there? Is there any technical showstopper, or are you just saying, well, we wouldn't do that? Isn't your argument… Neither, Your Honor. Okay. But, no, I think there's two elements to that question, and I want to make sure I respond to both of them. In your hypothetical, if he's flying in to New York and then we fly him to Boise, and he hasn't been charged with the missile count, then we're back in the same place. The first brought provision doesn't come into play because he's not being first brought in custody in connection with any offense. It's a separate group of offenses. So I think that's one distinction. If your underlying concern is the concern that the district court in D.C. had in the Vaux case, that this allows the government to essentially choose its venue, my response to that would be, well, to some extent it does, but so does the first brought provision, which my colleague appears to accept. I think as a matter of just background, the entire reason that we are having this discussion, that we have 3238, is we're not dealing with where the crime was committed. The principle of venue that's in Article III, Section 2 of the Constitution, is about, in the Declaration of Independence for that matter, is about trying people other than where the crime was committed. What we have here is a default rule when we don't have anywhere to try the person because there is no district of Greece where we're supposed to have this trial. To the extent that there are concerns about government form shopping, those apply just as easily to the first brought provision as it would to the arrested provision. It's a little harder if only because of flight ranges in the sense that, yes, if the government was really determined to fly somebody from Greece to Little Rock, they might be able to do it. Mr. Yunus, if you remember the Yunus case, was flown with air-to-air refueling, but normally people come in, in commercial, in a usual kind of way, and the government doesn't usually forum shop in advance. Your principle allows you forum shopping not only the first landing in New York, but well after. You could have flown him from California where he was under indictment on the first two counts and flown him to Boise and then indicted him on the third count, couldn't you? To be clear, I'm not suggesting the government is in the business of forum shopping. I'm attempting to respond to the hypothetical that I guess in the Vaux court's concern by pointing out that the first brought and the arrested provision are equally situated and I think largely mutually exclusive. Just to take a step back, this is a statute that has existed in more or less the same form since 1790s. So we're talking about before air travel, someone's captured on the high seas. What do you do with that person? Well, you can have venue where in the port presumably where the person's first brought or the person shows up not in custody and then we catch them. So instead of catching the pirate in the high seas, we catch the pirate wandering around Manhattan and you arrest the person in Manhattan for piracy and you have venue there. That's what's covered. He has some agency as to whether he's going to be in Manhattan or in Little Rock. I mean, in Erdos, that was part of the basis that he was allegedly at least at liberty until he got to the district where the government did arrest him. But here, you had him in custody and you're a pirate. Granted, the government might be able to go all the way up in Newport from the Caribbean, but likely it's some type of restraint or difficulty for the government to forum shop. I agree with you that it's not a complete showstopper, but it at least has the same language that the Constitution has about a district which shall have been determined in advance. It isn't exactly the same, but it puts some constraint on the government, doesn't it? I think, Your Honor, well, two points. Actually, Your Honor is referring to the Sixth Amendment, which is the vicinage requirement for jurors, which technically is a different requirement. It has to do with where the jurors come from, I think, if I'm not mistaken. But in all events, the background assumption here is that the person is in custody. So under the first brought provision, by definition, the person is in custody. Under the arrested provision, the person becomes in custody. And so in all events, the government has custody over this person. I don't think that the two provisions need to be interpreted differently because of any background concern about forum shopping, given that in both cases the person is in custody. And I guess just to turn to the more general sort of first point, this Court had a number of questions on waiver, and really procedural bar might be a better term given the rewording of Rule 12 and this Court's Guerrero decision. But in all events, a claim that you should be prosecuted somewhere else is something that should be raised before your trial starts. My colleague, when he was up here, said that he thinks that the venue issue was raised before trial, maybe 7 to 10 days before trial. In fact, it was 17 days before trial. It was on October 13, and the trial started on October 30. But in all events, even if it was after the Court's discretionary motions deadline, it was before trial. And no attempt was made to move this case to the Eastern District of New York. In fact, it wasn't even clear that the defendant's theory was he should be tried in the Eastern District of New York until the post-trial motion. And that's why the District Court found, with all the argument. Can you respond to Mr. Coleman's argument? I think he made it in relation to this, that the government didn't let him know exactly what provision that you were proceeding on until really late in the game, like 7 to 10 days before the trial. Can you comment on that? Yes, Your Honor, I can. And I was going to say, I think this is why the District Court found on page 5 of the ER that this was a novel argument that the defendant raised. The timeline is as follows. The defendant was indicted in March 2017. He files a pretrial request for judicial notice. I'm sorry, the government filed a pretrial request for judicial notice on October 9th, before the trial, asking for this detained and first brought language, the judicial notice instruction. At that point, the defendant, and this is in the transcript, on page ER 178, the defense objects to that and says that the government is asking the court to take judicial notice to alleviate their burden to prove venue in this case. So the statutory language and the defense knowledge that this is a venue issue occurred in early October, about a month, not quite a month before trial. This was not something that came up pretrial. And again, if the defendant wanted to be tried somewhere else, that was his opportunity to say so. Well, is he required to object? When you object to venue, are you required to raise the opposing venue? I mean, the government might argue at that point, well, where you want, but he isn't obliged to provide you with another venue, is he? I think he is, Your Honor, and maybe that's just appeal to equity rather than a rule. Because a lot of times, they don't have to tell you what the other side of it is. I think in the context of this case, and I think this is why this is not a normal venue case, the way this proceeded and was argued, the district court found during the trial, and I think this is unusual, the district court found, and this is at ER 49, that the defense was attempting to mislead the jury by planning to argue that venue should have been in Greece. So I think what the defense did here was sort of stay as noncommittal on the issue of venue as possible, although realizing it was an issue, never mentioned Eastern District of New York until after trial, and then at the end of the trial, when crafting the jury instructions, revealed that they were going to try to argue that venue couldn't be anywhere. And I think that's the thematic difference between the government's consistent position here and the defense position. The defense position was that essentially venue is nowhere, and the government's attempt throughout this trial and in all the different procedural stages we're talking about was to establish that venue was correct here with minimal prejudice to the defendant. So for example, we asked for a judicial notice instruction instead of putting in BOP records, which would have told the jury that this defendant was dangerous and a flight risk and in custody for a year and a half before he was tried. We tried to get this done through judicial records and judicial notice because it was undisputed that the defendant was in the MDC here in the Central District of California, and we needed to prove venue. I also should point out earlier that if, as Judge I think Bergia alluded to, the indictment itself, a normal indictment, says the crime was committed in this district. That's the basis for venue being clear from the indictment. This count didn't say that, and that makes this a very different case than Moran-Garcia. To the contrary, I'd like to correct my colleague, this is not at all like Moran-Garcia. Moran-Garcia incorrectly alleged that venue was in the Southern District of California when in fact it's not at all clear where the defendants were first brought. It was a factual issue, and the indictment alleged that the crime occurred in a district, and that wasn't true. And then the government had to fall back on 3238. Here, the indictment, we attempted to allege the facts necessary looking at the applicable circuit precedent, mostly Catino and Wharton, we alleged that the defendant was present in the Central District of California when he was indicted. The defense brings up in their brief sort of nuances on that. Well, maybe we needed to allege that he was summonsed to appear before the court or some sort of judicial process in addition to being detained here. Catino and Wharton don't get into that level of specificity, but it's certainly true and also reasonably inferable that somebody who is detained in the Central District and located in the Central District was first restrained of his liberty in connection with that count in the Central District when the grand jury hands up its indictment. There's no suggestion that he went anywhere else. And that's why it's been our position that this is a legal issue, that the facts here aren't disputed, and, you know, I think that first the claim is waived because, yes, if you're trying to say that my trial shouldn't be here, it should be at least in some other district, right? Not in Greece, but some other judicial district in the United States. That claim has to be clearly raised, right? And this is a Rule 12, not a DePuy issue, as we point out in our brief. And second, if the court is going to get into the legal rule here, venue is always evaluated count by count, charge by charge, offense by offense. And the entire thrust of the defense argument, based only on the D.C. District Court case, is a departure from the rule in every circuit that's addressed this issue, which is when you're evaluating venue in 3238, you look at the particular count charged. I think if the court were to follow the defense argument on the merits, it would end up with some very anomalous results. I'm sure the court can think of more, but I can think of two of them. If the 3238 count pulls other counts into that district, then you end up potentially violating the Constitution in cases like here, where you have counts that actually occurred somewhere in the United States, pulling them to another district on 3238. It also would make for, again, a bail determination dispositive for venue purposes. So, for example, if the defendant here had been at liberty on bail in the central district and was then rearrested and brought in an initial appearance before a magistrate judge, well then he, under the defense argument, I think, would have been physically arrested in this district. But because he was in custody, there's no venue, that doesn't make sense either. So I think that probably speaks to the fact that no circuit has adopted the rule that the defendant is asking this court to adopt. Can I ask you a question on a different subject area? I was just curious regarding the credibility instructions. I think there's been an issue raised on whether or not there should have been accomplished testimony instruction. And were the co-conspirators that testified against Mr. Gautam, I take it those are the mercenaries? Were they given any benefits? Not given any benefits by the government in return for their testimony? That's correct, Your Honor. They were not given any benefits, and the prosecutor representative of the court below, on the record when discussing this issue, that they were not given any benefits. I agree that doesn't end the question because, as this court said in an equu, and we agree with the defense insofar as the question is ultimately a subjective one. What they thought they were getting. But I guess let me just ask, were they promised that they would not be charged in return for their testimony? No, Your Honor, and there's also no indication they thought they could be charged. I acknowledge this is some tension with the defendant's extraterritoriality argument, but as far as the government knows, they were not promised anything, and as far as we know, they didn't think that we could prosecute them. They were Georgian nationals in Georgia that we obtained through, I'm sorry, I see my time is up. Judge Smith. Let me finish answering the question. There is no indication in the record that they thought we could prosecute them, and we have no information that they thought they could be prosecuted. To the extent that they believed subjectively that this was a risk, sure, that would be relevant, but if you look at this court's Model Rule 4.9, or Inekwu, or this court's case law, there still has to be some foundation for the instruction, and these mercenaries were cross-examined for hours. The defense had ample opportunity to develop some foundation that maybe they thought they were getting some benefit from the U.S. government by testifying, as opposed to just being there as a result of Georgian legal process, and that's not in the record. And so without a foundation, they're not entitled to the instruction. Other questions by either my colleagues or Mr. Robbins? No, thank you. Very well. Thank you, Your Honor. Thank you. Mr. Coleman, you have a little time left. Thank you, Your Honor. I want to focus on Van U first. First, I want to talk about the substantive legal issue and then the whole waiver issue. On the substantive legal issue, I think the government really mischaracterizes our argument and also the authority we're relying on. We're relying on the same cases that they cited, like Catino, this court's decision in Liang, and the government hasn't cited any case to support their position that if a defendant is taken into custody abroad, that you can then rely on the arrested provision in 3238. Catino, Liang, all these cases make clear if the defendant is taken in custody abroad, the first brought provision applies, and that fixes where Van U occurs. That's what those cases said. Now, I know the government doesn't like that rule, but they haven't cited any authority, any case that says when a defendant is taken in custody abroad and brought to the United States, that you can try them wherever you file the charge. That's just not the rule. So that's the substantive rule. Now, on the waiver issue, I think the government just kind of glanced over a lot of the procedural history. The superseding indictment is, I think, returned in the spring of 2017. It was either March or April of 2017. The defense then files a motion for a bill of particulars asking for the connection to the central district, which the government did not say in its procedural history. Government says, no, we're not going to give you any information, and the district court denies the motion. About a year and a half later, for the first time, the government says it's 17 days before trial. I said it's 10. I don't remember, but I'll credit the 17 days. It's after the motion's deadline. For the first time, they mention 3238. So I know you're over time, but Judge Smith will allow. I just want to make sure I understand your argument on Contino, because are you saying because he wasn't arrested? Because it sounds like Contino is saying when you're arrested in connection with charges, that that's enough. So I just want to make sure I understand your distinction in Contino or why you think Contino should not be the same logic and Contino should not be applied here. No, I think Contino should be applied here. The government, they're ignoring the whole analysis in Contino. What Contino did is it went through this whole analysis to explain that the defendant was not in custody when he was brought to the United States. And because he was not in custody, the government could then rely on the arrested provision. But what Contino says is if he had been in custody, and that's why they went through all of that analysis, that defendant too would have had to have been brought in the Eastern District of New York, presumably at JFK, because that's where he would have been first brought. But they said because he wasn't in custody at the time, we can then proceed under the arrested provision and he can be charged in a different district. I'm asking the court to follow Contino. Contino says if you're in custody abroad and you're first, then where, then you should, has to take place is where you are first brought. And had Contino been in custody abroad, he would have had to have been prosecuted in the Eastern District of New York. But because he was not in custody, they could prosecute him in the Southern District of New York. And that's the same thing that happened in Erdos. He landed in New York and he was not in custody. Exactly. And they waited until he landed at Dulles, and then they arrested him. Precisely, Your Honor. That's precisely the point. We're asking you to follow Erdos. Follow Contino. The government just wants to ignore the entire analysis and those decisions. They have not cited a single case to support their position. On the waiver issue, even at that late date, after the motion's deadline had expired, even at that late date, the government still didn't say, we're not proceeding under the Overt Act provision of conspiracy. When a conspiracy is charged, a defendant can be charged in any district where an Overt Act occurs. This indictment had said that Overt Acts occurred in the Central District, the entire indictment. The government never said, we're not relying on an Overt Act. We're only relying on this. The defense objected in any event. The government was well aware that the defense objected to their 3238 theory. They were well aware of that. Then at the Rule 29, they made this precise argument. He was not arrested in the Central District. He was arrested in East. Therefore, he would have to have been prosecuted in the Eastern District. I appreciate your argument. You make it very well. Both of you do. Your time is up, unless either of my colleagues has additional questions for Mr. Coleman. Then the case disargued, United States v. Ghanem, is submitted. The court stands adjourned for the week. Thank you, gentlemen.
judges: Boggs, M. Smith, Murguia